IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. VIDYA S. BANKA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-4656 |
| | : | |
| COLUMBIA BROADCASTING | : | |
| COMPANY | : | |

## <u>MEMORANDUM</u>

**Juan R. Sánchez, J.**                                          **October 30, 2014**

      Plaintiff Dr. Vidya S. Banka brings this action against Defendant Columbia Broadcasting Company (CBS 3)[1] alleging claims of libel and false light invasion of privacy[2] stemming from two reports CBS 3 broadcasted on both its television channel and its website on April 3, 2013, and May 1, 2013. CBS 3 filed a motion to dismiss, asserting Dr. Banka's claims are barred by the statute of limitations because he failed to serve his Complaint in a timely manner. CBS 3 also asserts that even if the the Complaint was timely served, the Court should dismiss the Complaint for failure to state a claim or, in the alternative, suspend this case pending the resolution of several malpractice lawsuits filed against Dr. Banka in state court. CBS 3's motion to dismiss will be denied in its entirety for the reasons set forth below.

---

[1] In his Complaint, Dr. Banka also asserted claims against CBS 3 reporter Stephanie Stahl, but he voluntarily dismissed Stahl as a Defendant on September 15, 2014.

[2] Dr. Banka asserts claims for both libel per se (Count One) and libel (Count Two), but Pennsylvania courts no longer recognize such a distinction in libel claims. *See Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 470-71 (Pa. Super. Ct. 1984). The Court will therefore treat Counts One and Two as a single claim of libel.

**BACKGROUND**[3]

Dr. Banka is a cardiologist in Pennsylvania, and is not a public official or public figure.[4] Beginning in 1996, Dr. Banka practiced at the Pennsylvania Hospital in Philadelphia (the Hospital) and performed cardiac cauterization and percutaneous coronary interventions including stent procedures. He also served as Clinical Professor of Medicine at the University of Pennsylvania School of Medicine (now known as the Perelman School of Medicine of the University of Pennsylvania), and maintained a private practice as a cardiologist.

In June 2012, an unidentified person complained about Dr. Banka to the Hospital, suggesting he performed stent procedures that were medically inappropriate and he should be investigated. The Hospital then began an investigation into Dr. Banka's treatment of his former patients that lasted until August 2012. Dr. Banka was not told of any formal investigation in writing, nor was he asked to reply to allegations of inappropriate procedures. He was also not asked to participate in the review or to provide information to the Hospital. In September 2012, the Hospital advised Dr. Banka it had identified eight stenting procedures involving four patients that it deemed inappropriate and asked him to voluntarily relinquish his invasive and

---

[3] The following facts are drawn from Dr. Banka's Complaint and the televised broadcasts and Internet articles at issue in this case, which this Court may properly consider in evaluating the instant motions to dismiss without converting the motion into one for summary judgment. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (holding materials a court may consider in deciding a Rule 12(b)(6) motion include the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which the plaintiff's claims are based); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (alteration in original) (citation and internal quotation marks omitted)); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[4] During oral argument on the motion to dismiss, CBS 3 indicated it may argue Dr. Banka was a limited purpose public figure, but for purposes of this motion only, the Court assumes Dr. Banka is, as he asserts, a private individual.

interventional cardiology medical privileges. Dr. Banka acquiesced and voluntarily relinquished those privileges on September 7, 2012.

Between September 2012 and January 2013, Dr. Banka continued to teach, see patients, and practice clinical cardiology at the Hospital. In January 2013, after Dr. Banka discussed moving his practice from the Hospital, the Hospital disclosed the names of the four patients and the eight stent procedures which were flagged in the review. On March 1, 2013, Dr. Banka resigned his position at the Hospital because he had reached a tentative agreement to join the faculty at Drexel University and move his practice to Hahnemann University Hospital. The Hospital thereafter sent letters to all 700 of Dr. Banka's patients informing them it had reviewed a sample of Dr. Banka's cases and found in some cases "placement of a stent may be not have been supported by the testing that was done at the time." Mem. of Law in Supp. of Def.'s Mot. to Dismiss (hereinafter Mot. to Dismiss) Ex. 1, at 20. The letters did not claim Dr. Banka had actually performed any unnecessary stent procedures. On April 3, 2013, the Hospital made a public statement regarding its investigation, announcing it found upon a review of a sample of Dr. Banka's cases that some patients received stents when the testing did not appear to show significant vascular blockage. The Hospital also stated it had notified the U.S. Attorney and State Board of Medicine and accepted Dr. Banka's resignation.

CBS 3 investigates and publishes news stories on television, the Internet, and other media. Its coverage reaches Pennsylvania and parts of New Jersey and Delaware. On the same day the Hospital made its public statement, Stephanie Stahl, a CBS 3 employee and reporter, wrote, published, and broadcasted a report on both CBS 3's television channel and website entitled "Philadelphia Doctor Resigns After Investigation Finds Stents in Patients That Didn't Need Them" (hereinafter April 3 Report). The Internet article identified Dr. Banka as the

"Philadelphia Doctor" referenced in the title, and was accompanied by a picture of Dr. Banka. On May 1, 2013, CBS 3 and Stahl published a similar story on CBS 3's television channel and website titled "First Lawsuit Filed in Unnecessary Stent Investigation" (hereinafter May 1 Report).

In his claim for libel, Dr. Banka argues these reports contained many false statements. He also asserts defamation by implication, contending the reports implied he was unfit to work as a physician because he had subjected his patients to unnecessary and inappropriate procedures and he was forced to resign as a result. He claims the reports not only injured his professional reputation, but, because the story was quoted in a cardiology journal, the reports ruined his academic reputation as well.

**DISCUSSION**

**A. Statute of Limitations**

In its motion to dismiss, CBS 3 initially asserts Dr. Banka failed to make a good faith effort to serve the writ of summons or the Complaint before the statute of limitations expired. Pennsylvania law requires a plaintiff to commence an action for defamation or invasion of privacy within one year of publication of the statement at issue. 42 Pa. Cons. Stat. § 5523(1). The statute of limitations may be tolled by filing a praecipe for writ of summons or a complaint prior to the expiration of the limitations period. *See Witherspoon v. City of Phila.*, 768 A.2d 1079, 1083 (Pa. 2001). If a plaintiff fails to make service of the writ or complaint within thirty days, "the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint." Pa. R. Civ. P. 401(b)(1). In *Lamp v. Heyman*, the Pennsylvania Supreme Court created a check on the potentially unending reinstatement process and ruled a plaintiff must make a "good-faith effort" to effect service

during the life of the reissued writ or reinstated complaint. 366 A.2d 882, 889 (Pa. 1976). If the plaintiff, rather than the defendant, delays service, the statute of limitations will expire despite the reinstatement. *Id.*; *see also Witherspoon*, 768 A.2d at 1083; *Miller v. Klink*, No. 02-05309, 2004 WL 5799973, at *1 (Pa. Ct. Com. Pl. Chester Cnty. Mar. 17, 2004) ("If service is not promptly made within thirty days of the issuance of the Writ or the filing of the Complaint, then when service is finally made beyond the expiration of the statute of limitations the plaintiff must establish service was made with a 'live' Writ and a good faith effort was made to serve it within the statute of limitations.").

Dr. Banka filed a praecipe for a writ of summons in the Court of Common Pleas of Philadelphia County on April 2, 2014, and filed his Complaint against CBS 3 and Stahl on April 30, 2014. Dr. Banka filed for and was granted reinstatement of his Complaint on May 29, 2014, and again on July 8, 2014. He ultimately served CBS 3 on July 18, 2014, by leaving the writ and Complaint at CBS 3's office in Philadelphia. Dr. Banka has submitted to the Court a signed statement from an assistant investigator for ILS Investigations stating on April 22, 2014, the investigator attempted to serve CBS 3 and a CBS 3 reporter (presumably Stahl, who was later voluntarily dismissed) but was told by the receptionist at CBS 3 headquarters to call CBS 3's legal representative. The investigator called CBS 3's legal representative and, upon that representative's instructions, gave the legal representative's phone number to Dr. Banka's attorney. Dr. Banka's attorney has submitted an affidavit asserting he then called the legal representative and was informed he had to serve CBS through its Corporation Service Company. Dr. Banka has provided two letters from Corporation Service Company dated June 5, 2014 and July 1, 2014, stating respectively that service could not be completed because Dr. Banka had incorrectly identified CBS 3 and because it was not the CBS registered agent for service of

process. The materials produced by Dr. Banka demonstrate he made a good faith effort to serve CBS 3 and CBS 3 was alerted very early on about this lawsuit. The Court therefore finds the Complaint was served within the statute of limitations, and CBS 3's request for dismissal on this ground will be denied.

### B.  Failure to State a Claim

CBS 3 also asserts the Complaint should be dismissed because it fails to state a claim upon which relief may be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Under Pennsylvania law, in an action for defamation, the plaintiff has the burden of proving seven elements: (1) The defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a). Because the Court will assume,

6

for purposes of this motion to dismiss, that Dr. Banka is a private figure and both news reports dealt with matters of public concern, in order for Dr. Banka to recover damages, he must also show the statements at issue are false. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) ("[W]e hold that the common-law presumption that defamatory speech is false cannot stand when a [private-figure] plaintiff seeks damages against a media defendant for speech of public concern.").

A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Curran v. Phila. Newspapers, Inc.*, 546 A.2d 639, 641 n.2 (Pa. Super. Ct. 1988) (quoting *Corabi v. Curtis Publ'g Co.*, 273 A.2d 899, 904 (Pa. 1971)). Whether a challenged statement is capable of defamatory meaning is an issue of law for the court to determine in the first instance. *See Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215 (Pa. 1981). The statement must be viewed in context, and "[a] critical factor . . . is the nature of the audience hearing the remark." *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987).

During the oral argument on the motion to dismiss, Dr. Banka argued he is asserting a libel-by-implication claim, such that "the literal accuracy of separate statements will not render a communication 'true' where . . . the *implication* of the communication as a whole was false." *Fanelle v. Lojack Corp.*, No. 99-4292, 2000 WL 1801270, at *2 (E.D. Pa. Dec. 7, 2000) (quoting *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 16 (Pa. Super. Ct. 1982)). "If the defendant juxtaposes [a] series of fact[s] so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication . . . he may be held responsible for the defamatory

implication." *Id.* at *3 (alteration in original) (quoting William L. Prosser, The Law of Torts § 116 (5th ed., Supp. 1988)).[5]

Here, select statements and the overall implication of CBS 3's reports are capable of a defamatory meaning; therefore, Dr. Banka's claims for libel will not be dismissed for failure to state a claim. For example, the April 3 article posted on CBS 3's website was titled "Philadelphia Doctor Resigns After Investigation Finds Stents In Patients That Didn't Need Them." Compl. Ex. B. During the April 3 television broadcast accompanying the article, CBS 3 reporter Elizabeth Hur stated, "It turns out Penn Medicine is notifying some patients they received heart stents they didn't need," and then identified Dr. Banka as the doctor who performed those procedures. Mot. to Dismiss Ex. 2, at 2:23-3.3. In actuality, Penn Medicine notified patients that

---

[5] CBS 3 asserts several federal appellate courts have added an extra layer of protection in libel-by-implication cases, regardless of whether the plaintiff is private or public, to prevent meritless implied-meaning claims to proceed to costly discovery. These courts have required the plaintiff to show the implication was intended or endorsed by the defendant; in other words, "[t]he language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993); *see also White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) ("[I]f the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning.").

The Pennsylvania Supreme Court has not addressed this issue. In *Fanelle v. Lojack Corporation*, a court in this district observed that under Pennsylvania's defamation statute, "a plaintiff already must establish that the recipient of the communication understands the communication to be defamatory and intended to apply to the plaintiff," and thus, the Pennsylvania defamation statute already incorporates an extra layer of protection against implication claims. No. 99-4292, 2000 WL 1801270, at *3 n.7 (E.D. Pa. Dec. 7, 2000) (citing 42 Pa. Cons. Stat. § 8343(a)). The argument that a plaintiff should demonstrate more in a defamation-by-implication case than a standard defamation case demands too much because "such additional requirements teeter dangerously close to requiring a showing of the actual intent of the speaker such as 'actual malice,' the high threshold of proof that the Supreme Court of the United States established to protect the sacred rights of publishers under the First Amendment." *Id.* This Court agrees with the analysis in *Fanelle* and finds the elements required to establish a claim for defamation-by-implication in Pennsylvania are no more and no less than those set forth in Pennsylvania's defamation statute. *See id.*

an investigation into a sample of Dr. Banka's cases found in some cases placement of the stent *may* not have been supported by the testing done at the time. The May 1 Internet article contained similar statements, claiming "[p]atients were implanted with heart stents they didn't need by a doctor who's no longer with the system." Compl. Ex. A. During the accompanying television broadcast, reporter Stahl stated, "Penn Medicine has already admitted there was a problem, patients implanted with heart stents they didn't need by a doctor who is no longer with the System." Mot. to Dismiss Ex. 3, at 2:10-2:13. At present, however, the Court is not aware of any final determination that the patients did not need the stents. These statements, in combination with the factually accurate statements regarding the Hospital's investigation and the malpractice claims against Dr. Banka, are sufficient to support a claim to relief that is plausible on its face for both libel and libel by implication.[6]

### C. Fair Report Privilege

CBS argues, even if the Complaint states a plausible claim for libel, the May 1 Report is protected by the fair report privilege because it simply reported on the filing of a malpractice lawsuit in state court, and therefore any claims as to the May 1 Report are meritless and should be dismissed. The fair report privilege allows the press to publish accounts of official proceedings or reports even when the underlying proceedings or reports contain defamatory

---

[6] Although not discussed to a significant extent in the motion, CBS 3 also asserts Dr. Banka's false light claim must be dismissed because Dr. Banka has failed to demonstrate the reports made a material misrepresentation of his character. In order to establish a cause of action for false light, the plaintiff must prove: (1) "the false light in which [the plaintiff] was placed would be highly offensive to a reasonable person;" and (2) the defendant "had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed." *Lin v. Rohm and Haas Co.*, 293 F.Supp.2d 505, 521-22 (E.D. Pa. 2003) (citing *Curran v. Children's Serv. Ctr.,* 578 A.2d 8, 12 (Pa. Super. Ct. 1990)); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 510-11 (E.D. Pa. 2010). Given that the Court finds the statements made during the reports are capable of a defamatory meaning, it is plausible CBS 3 caused Dr. Banka to be placed in a false light. The Court therefore finds it is not appropriate at this stage to dismiss the false light claim either.

statements, as long as the accounts present a fair and accurate summary. *See Medico v. Time, Inc.*, 643 F.2d 134, 137-38 (3d Cir. 1981); *see also Sciandra v. Lynett*, 187 A.2d 586, 588-89 (Pa. 1963) ("If the newspaper account is fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed, it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate."). The privilege applies to reports on unanswered pleadings. *First Lehigh Bank v. Cowen*, 700 A.2d 498, 498-99 (Pa. Super. Ct. 1997) (holding a newspaper possessed a qualified privilege to report information contained in a private civil complaint filed in federal court even though no judicial action had been taken on the complaint).

The burden is on the defendant to establish the existence of a privileged occasion, and the issue as to whether or not a published communication is conditionally privileged is one of law to be determined by the court. *Id.* at 503. Once the existence of a privileged occasion is established, the burden shifts to the plaintiff to establish the privilege was abused and therefore forfeited. *Id.* The privilege can be forfeited if the defendant overly embellished or made exaggerated additions to an account of a proceeding. *Sciandra*, 187 A.2d at 589. The abuse of the privilege is a question for the jury, unless "the evidence is so clear no reasonable person would determine the issue before the court in any way but one," in which case "the court will itself determine the issue." *First Lehigh Bank v. Cowen*, 700 A.2d at 503; *see also* 42 Pa. Cons. Stat. § 8343(a)(7); *DeMary v. Latrobe Printing & Pub. Co.*, 762 A.2d 758, 763 (Pa. Super. Ct. 2000). In this case, while the May 1 Report is a privileged occasion because it for the most part focused on a state court malpractice case filed against Dr. Banka, it is possible some statements in both the Internet

article and televised report constituted an abuse of that privilege. This Court cannot decide at this stage if CBS 3 has forfeited such privilege.[7]

### D.  Request to Place Case in Suspense

Lastly, CBS 3's request to place this case in suspense in light of the malpractice lawsuits currently pending against Dr. Banka in state court is also denied. CBS 3 asserts each of the malpractice cases turns on the particular facts of patient care rendered by Dr. Banka and the sum of them will tend to prove whether his conduct adversely affected his patients and whether he was in fact unfit to work as a physician. CBS contends because Dr. Banka must prove falsity, the findings in those suits will directly impact this case. There is no guarantee, however, that the state court matters will be resolved in a way that is relevant to these federal proceedings. First, whether Dr. Banka committed malpractice is not the same question as whether CBS 3's

---

[7] Dr. Banka asserts the May 1 Report was a republication of the April 3 Report, and because the April 3 Report was defamatory, the fair report privilege cannot attach to the May 1 Report. To avoid endless re-triggering of the statute of limitations in defamation cases, Pennsylvania has adopted the "single publication rule." *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012). Under this rule, "for purposes of the statute of limitations any one edition of a book or newspaper, or any one radio, television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." *Id.* at 174 (citation and internal quotation marks omitted). The exception to this rule is the doctrine of republication, which holds "[r]epublishing material (for example, the second edition of a book), editing and reissuing material, or placing it in a new form that includes the allegedly defamatory material, resets the statute of limitations." *Id.*

CBS 3 asserts the May 1 Report is not a republication of the April 3 Report, and the fair report privilege attaches and protects the May 1 Report in its entirety even though it refers to a previous report that is not protected by that privilege. *See id.* at 175 ("Additionally, under traditional principles of republication, a mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material."). Dr. Banka argues the May 1 Report is far more than a "mere reference" to the April 3 Report; therefore, it constitutes a republication, and the fair report privilege cannot attach. While the Court agrees there are some embellishments in the May 1 Report as explained above, these statements do not make it a republication of the April 3 Report because the May 1 Report focused almost exclusively on the underlying state malpractice suit which did not exist at the time of the April 3 Report. As such, the May 1 Report will stand on its own, and Dr. Banka is free to challenge the abuse of the fair report privilege.

statements that the stents were unnecessary or implication that Dr. Banka was unfit are false. Second, these state cases may eventually settle, with no findings as to Dr. Banka's liability, or may result in inconsistent verdicts. There is no reason to stay this case in light of the state court malpractice lawsuits.

Accordingly, CBS 3's motion to dismiss will be denied. An appropriate order follows.


BY THE COURT:


/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.